The STATE of Ohio, Appellee,

v.

ROBERTS, Appellant.

[Cite as *State v. Roberts,* 180 Ohio App.3d 666, 2009-Ohio-298.]

Court of Appeals of Ohio,
Third District, Marion County.

No. 9–08–31.

Decided Jan. 26, 2009.

---

Jim Slagle, Marion County Prosecuting Attorney, for appellee.

Kevin P. Collins, for appellant.

_____

ROGERS, Judge.

{¶ 1} Defendant-appellant, James F. Roberts Jr., appeals the judgment of the Marion County Court of Common Pleas convicting him of attempted murder and felonious assault and sentencing him to an aggregate 23–year prison term. On appeal, Roberts argues that the trial court erred in convicting and sentencing him for both attempted murder and felonious assault because they are allied offenses of similar import. Finding that Roberts's convictions each arose from a separate animus, we affirm the judgment of the trial court.

{¶ 2} In October 2007, the Marion County Grand Jury indicted Roberts for one count of attempted murder in violation of R.C. 2903.02(A) and 2923.02, a felony of the first degree; one count of kidnapping in violation of R.C. 2905.01(B)(2), a felony of the first degree; two counts of felonious assault in violation of R.C. 2903.11(A)(1), felonies of the second degree; and one count of domestic violence in violation of R.C. 2919.25(A), a felony of the third degree. Roberts entered a plea of not guilty to all counts.

{¶ 3} The indictment arose after Roberts repeatedly stabbed Erica Kelder, his live-in girlfriend and the mother of his child. The presentence investigation report and sentencing-hearing transcript disclose that Roberts and Kelder argued; that Roberts obtained a steak knife and began stabbing Kelder until the blade broke from the handle; that he then obtained a butcher knife, chased her down a hallway, and began stabbing her again; that Kelder sustained a total of 19 or 20 stab wounds to her chest, abdomen, torso, arms, and face; and that she required life flight to the hospital due to the severity of her injuries.

{¶ 4} In January 2008, Roberts filed a motion for leave to file a plea of not guilty by reason of insanity.

{¶ 5} In March 2008, Roberts withdrew his plea of not guilty by reason of insanity and again entered a plea of not guilty.

{¶ 6} In June 2008, Roberts entered into a plea agreement whereby he agreed to plead guilty to the attempted-murder and domestic-violence counts and one felonious-assault count. The state agreed to recommend that the trial court enter a nolle prosequi to the kidnapping count as well as the remaining felonious-assault count. The trial court accepted Roberts's pleas of guilty and sentenced him to a ten-year prison term on the attempted-murder count, an eight-year prison term on the felonious-assault count, and a five-year prison term on the domestic-violence count, to be served consecutively, for an aggregate 23–year prison term.

{¶ 7} It is from this judgment of conviction and sentence that Roberts appeals, presenting the following assignments of error for our review.

### Assignment of Error No. I

The trial court erred to the prejudice of defendant-appellant by sentencing him for both attempted murder and felonious assault when they are allied offenses of similar import.

### Assignment of Error No. II

The trial court erred to the prejudice of defendant-appellant by sentencing him to a 23 year term of imprisonment.

{¶ 8} Due to the nature of Roberts's arguments, we elect to address his assignments of error together.

### Assignments of Error Nos. I & II

{¶ 9} In his first assignment of error, Roberts argues that the trial court erred in sentencing him for both attempted murder and felonious assault because they are allied offenses of similar import. Specifically, Roberts contends that the attempted-murder and felonious-assault counts arose from the same conduct, requiring their merger. In his second assignment of error, Roberts argues that the trial court erred in sentencing him to a 23–year prison term. Specifically, Roberts contends that the trial court should not have imposed sentences for each of his convictions because they arose from the same conduct. We disagree.

{¶ 10} Initially, we note that Roberts did not raise the issue of allied offenses of similar import when the trial court sentenced him. Matters not objected to at the trial level are reviewed under the plain-error standard. Crim.R. 52(B). In order to have plain error under Crim.R. 52(B), there must be an error, the error must be an "obvious" defect in the trial proceedings, and the error must have affected "substantial rights." *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240. Plain error is to be used "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id.

{¶ 11} R.C. 2941.25 governs multiple-count offenses and provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or

similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

■ {¶ 12} R.C. 2941.25 requires a two-prong analysis. In the first prong, we must determine whether the offenses constitute allied offenses of similar import under R.C. 2941.25(A). In making this determination, the Supreme Court of Ohio recently held that:

[C]ourts are required to compare the elements of offenses in the abstract without considering the evidence in the case, but are not required to find an exact alignment of the elements. Instead, if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in commission of the other, then the offenses are allied offenses of similar import.

*State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, paragraph one of the syllabus, clarifying *State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699.

{¶ 13} In the second prong, we must determine whether the defendant may be convicted of all of the offenses charged under R.C. 2941.25(B). The Supreme Court of Ohio has stated that " '[i]f the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses.' " *Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, at ¶ 14, quoting *State v. Blankenship* (1988), 38 Ohio St.3d 116, 117, 526 N.E.2d 816. The supreme court has defined "animus" as the "purpose, intent, or motive." *Blankenship*, 38 Ohio St.3d at 119, 526 N.E.2d 816.

{¶ 14} R.C. 2903.02(A) governs murder and provides that "[n]o person shall purposely cause the death of another." Additionally, R.C. 2903.11(A)(1) governs felonious assault and provides that "[n]o person shall knowingly * * * [c]ause serious physical harm to another." In determining whether a separate animus exists for both felonious assault and attempted murder, courts have examined case-specific factors such as whether the defendant at some point broke "a temporal continuum started by his initial act"; whether facts appear in the record that "distinguish the circumstances or draw a line of distinction that enables a trier of fact to reasonably conclude separate and distinct crimes were committed"; whether, at some point, the defendant created a "substantial independent risk of harm"; and, whether a significant amount of time passed between the beginning of the felonious assault and the end of the attack. *State v. Williams*, 8th Dist. No. 89726, 2008-Ohio-5286, 2008 WL 4531946, ¶ 37; *State v. Hines*, 8th Dist. No. 90125, 2008-Ohio-4236, 2008 WL 3870669, ¶ 48; *State v. Chaney*, 5th Dist. No. 2007CA00332, 2008-Ohio-5559, 2008 WL 4712753, ¶ 33.

{¶ 15} Courts have found a separate animus for both felonious assault and murder or attempted murder when a defendant shot a victim in the back as he attempted to run away, then ran up to the victim as he lay on the ground and fired multiple shots into his head, *State v. Wilson*, 2d Dist. No. 22120, 2008-Ohio-4130, 2008 WL 3582812; when a defendant shot a victim inside a building, then chased him outside and attempted to shoot him again, *Hines*, 2008-Ohio-4236, 2008 WL 3870669; and when a defendant severely beat a victim for a prolonged period of time, striking him between six and 12 times in the head and neck, *Chaney*, 2008-Ohio-5559, 2008 WL 4712753.

{¶ 16} Conversely, courts have found that a separate animus did not exist for both felonious assault and attempted murder when a defendant fired two shots at a victim in rapid succession without breaking a temporal continuum, eliminating any possibility that he had a separate animus to both feloniously assault and murder the victim, *Williams*, 2008-Ohio-5286, 2008 WL 4531946; and when a defendant rapidly fired multiple shots into a vehicle, *State v. Sutton*, 8th Dist. No. 90172, 2008-Ohio-3677, 2008 WL 2833644.

{¶ 17} Here, Roberts began attacking Kelder with a steak knife and stabbed her until the blade broke from the handle. Roberts then obtained a butcher knife from the kitchen, chased her down a hallway, and continued to stab her. Kelder sustained 19 or 20 stab wounds from the attack. We find that Roberts's initial stabbing of Kelder with the steak knife constituted a separate animus for felonious assault and that his resumption of the stabbing with a butcher knife constituted a separate animus for attempted murder. The cessation in the attack during which Roberts obtained a second knife constitutes a line of distinction or break in the "temporal continuum," from which we conclude that separate and distinct crimes were committed. Additionally, Roberts's resumption of the stabbing created a substantial independent risk of harm, particularly given the larger knife. Having determined that a separate animus existed for each offense under the second prong of R.C. 2941.25, we need not determine whether the offenses were allied under the first prong.

{¶ 18} Additionally, having found that Roberts's convictions did not arise from the same conduct, we find that the trial court did not err in sentencing him for each conviction.

{¶ 19} Accordingly, we overrule Roberts's first and second assignments of error.

{¶ 20} Having found no error prejudicial to the appellant, in the particulars assigned and argued, we affirm the judgment of the trial court.

Judgment affirmed.

WILLAMOWSKI and SHAW, JJ., concur.